UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VICTOR ROSARIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:19-cv-10532-LTS |
| | ) | |
| Lowell Police Officers HAROLD G. WATERHOUSE, JOHN GIUILFOYLE, GARRETT SHEEHAN, JOHN R. NEWELL, GEORGE H. GENTLE, JOSEPH M. McGARRY, LARRY B. McGLASSON, WILFRED DOW, JOHN R. MYERS, and UNKNOWN OFFICERS OF THE LOWELL POLICE DEPARTMENT; Lowell Fire Fighter WILLIAM M. GILLIGAN and UNKNOWN MEMBERS OF THE LOWELL FIRE DEPARTMENT; Massachusetts State Police Officer DAVID A. COONAN, and UNKNOWN OFFICERS OF THE MASSACHUSETTS STATE POLICE; and the CITY OF LOWELL, | ) | |
| Defendants. | ) | |

ORDER ON MOTION REGARDING DECEASED DEFENDANTS (DOC. NO. 39)

September 27, 2019

SOROKIN, J.

Now before the Court is Plaintiff Victor Rosario's Motion Regarding Deceased Defendants. Doc. No. 39. After a hearing on the motion, post-argument submissions from the parties, and careful consideration by the Court, Rosario's motion is DENIED.

I. BACKGROUND[1]

In 1983, Rosario was convicted of arson and eight counts of second-degree murder following an investigation into a fire that occurred on Decatur Street in Lowell, Massachusetts.

---

[1] The Court recounts the facts as they are alleged in Rosario's Complaint. Doc. No. 1.

As a result, Rosario was incarcerated for 32 years. In 2017, Rosario's motion for a new trial, originally granted by Middlesex County Superior Court, was affirmed by the Supreme Judicial Court of Massachusetts. Commonwealth v. Rosario, 74 N.E.3d 599 (Mass. 2017). Thereafter, the Middlesex District Attorney's office declined to proceed with a new trial. Upon his release from prison, Rosario brought several 42 U.S.C. § 1983 and state tort law claims against Lowell police officers and supervisors, Lowell Fire Department officials and fire fighters, Massachusetts State Police officers and supervisors, and the City of Lowell alleging that unconstitutional interrogation techniques and fabricated evidence resulted in his allegedly wrongful conviction.

After filing his complaint, however, Rosario learned that five defendants—William M. Gilligan, John R. Newell, Joseph M. McGarry, Larry B. McGlasson, and John R. Myers ("Deceased Defendants")—are deceased. Subsequently, Rosario filed the instant motion requesting the Court's permission to proceed against the Deceased Defendants, either by: (1) appointing Lowell City Clerk Michael Geary "as personal representative to defend the suit on behalf of each of the Deceased Defendants" under Federal Rule of Civil Procedure 25; or (2) serving Defendant City of Lowell as the true party in interest pursuant to a provision of the Massachusetts Uniform Probate Code, Mass. Gen. Laws ch. 190B, § 3-803(d)(2). Doc. No. 40 at 3-4.

II.   DISCUSSION

The Court considers, in turn, Rosario's two proposals for proceeding against the Deceased Defendants.

   A. Rule 25

Federal Rule of Civil Procedure 25 provides that if "a party dies and [a] claim is not extinguished," a court "may order substitution of [a] proper party," including a decedent's

2

successor or representative. Fed. R. Civ. P. 25(a)(1). Federal courts have consistently held that Rule 25(a)(1) "only applies to *parties*—that is, defendants that have been served with a complaint and then died after service." Deleon-Reyes v. Guevara, No. 18-CV-01028, 2019 WL 1200348, at *1 (N.D. Ill. Mar. 14, 2019) (emphasis in original); see also Moul v. Pace, 261 F. Supp. 616, 618 (D. Md. 1966) ("Rule 25(a)(1) does not apply in this case because the defendant Pace was deceased at the time the suit was filed."). As none of the Deceased Defendants were parties to this suit at the time of their deaths, Rule 25 is inapposite.[2]

B. Massachusetts Uniform Probate Code Section 3-803(d)(2)

The parties also dispute whether Rosario may proceed by naming the Deceased Defendants as parties but serving process on the City of Lowell, a process that Rosario argues is sanctioned by state law. Under Massachusetts probate law, a litigant generally may not bring an action against the personal representative of an estate "unless such action is commenced within 1 year after the date of the death of the deceased." Mass. Gen. Laws ch. 190B, § 3-803(a). However, subsection (d)(2) creates an exception to that general rule:

> Nothing in this section affects or prevents . . . an action for personal injury or death, if commenced more than 1 year after the date of death of the decedent, brought against the personal representative; provided further, that the action is commenced not later than 3 years after the cause of action accrues; and provided further, that a judgment recovered in that action shall only be satisfied from the proceeds of a policy of liability bond or liability insurance, if any, and not from the general assets of the estate; and provided further, that if a personal representative has not been appointed, then an action otherwise allowed pursuant to this chapter may be maintained without such appointment, and shall be maintained naming the decedent as the defendant; and provided further, that in that event any service of process that may be necessary shall be made upon the entity providing the insurance or bond.

---

[2] To the extent that this Court has the power to appoint a "special personal representative" who could then be substituted as a proper party under Rule 25, the necessary conditions for such an appointment are absent here. See Mass. Gen. Laws ch. 190B, § 3-614 (providing that "a special personal representative may be appointed" when "that appointment is necessary to preserve [an] estate," "to secure its proper administration," or when "it appears to the court that an emergency exists").

3

Id. § 3-803(d)(2).

At the threshold, the Court's consideration of section 3-803 is guided by canons of statutory interpretation routinely employed by Massachusetts courts. Under Massachusetts law,

> a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.

Hanlon v. Rollins, 190 N.E. 606, 608 (Mass. 1934). A court "must ascertain the intent of a statute from all its parts and from the subject matter to which it relates and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense." The Harvard Crimson, Inc. v. President & Fellows of Harvard C., 840 N.E.2d 518, 522 (Mass. 2006). Thus, the Court engages in its inquiry "by looking at the words of the statute—but not in isolation from the statute's purpose or divorced from reason and common sense." DiGiacomo v. Metro. Prop. & Cas. Ins. Co., 847 N.E.2d 1107, 1111 (Mass. App. Ct. 2006).

As with all statutes, the Court recognizes that section 3-803 was not enacted in a vacuum. See Boswell v. Zephyr Lines, Inc., 606 N.E.2d 1336, 1341 (Mass. 1993) (noting that Massachusetts courts "attempt to construe [statutes] in harmony with other related statutes and rules so as to give rise to a consistent body of law"). The statute truncates the ordinary three-year statute of limitations generally applicable to tort actions in Massachusetts, Mass. Gen. Laws ch. 260, § 2A, instead imposing a one-year limit on suits brought against decedents running from "the date of death of the decedent." Mass. Gen. Laws ch. 190B, § 3-803(a). However, subsection (d)(2) restores the typical three-year statute of limitations for litigants bringing "an

action for personal injury" against a decedent. Id. § 3-803(d)(2).[3] Presently, the parties dispute whether Rosario has satisfied the several necessary conditions for invoking subsection (d)(2), as well as whether the relief he seeks may be awarded under the statute.

1. "Personal Injury" Under Subsection (d)(2)

The parties dispute whether the instant lawsuit is an action within the scope of subsection (d)(2). Given that Massachusetts courts consistently embrace a broad understanding of personal injury claims, the Court concludes that Rosario's claims constitute "an action for personal injury" within the meaning of subsection (d)(2). See, e.g., Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist., 410 F. Supp. 2d 7, 12-13 (D. Mass. 2006) (holding that an action under 42 U.S.C. § 1983 alleging a deprivation of procedural due process should be treated as a claim for personal injury under Massachusetts law); Litif v. United States, 682 F. Supp. 2d 60, 83 (D. Mass. 2010), aff'd, 670 F.3d 39 (1st Cir. 2012) (holding that "[d]amages to the person need not be physical" under Massachusetts law); Harrison v. Loyal Protective Life Ins. Co., 396 N.E.2d

---

[3] The Court emphasizes that subsection (d)(2) is only relevant to claims brought more than one year after the date of death of a decedent. Based on the representations of counsel, the Court understands that Rosario may have commenced this action, as to all five of the Deceased Defendants, more than one year after the relevant dates of death. Doc. No. 45 at 8. If Rosario's action was commenced within one year of a Defendant's death and a personal representative was appointed for that Defendant, Rosario's claim will be governed by typical procedures prescribed by the Massachusetts Uniform Probate Code. See Mass. Gen. Laws ch. 190B, § 3-104 (enumerating the ordinary process for maintaining claims against decedents). In the case that this action was commenced within one year of a Defendant's death and a personal representative was not appointed for that Defendant, Rosario may be able to proceed pursuant to section (d)(2). See infra (describing conditions that must be satisfied before Rosario may proceed nominally against a Deceased Defendant by serving process on the City); see also Cross v. Hewitt, 744 N.E.2d 1075, 1078 (Mass. App. Ct. 2001) (holding that "[t]he Legislature, in enacting [subsection (d)(2)], did not intend to prohibit suits brought within the first year of the decedent's death; rather it was emphasizing that an action could still be brought after the first year, if [an insurer or bond provider] were the real party at interest").

5

987, 989 (Mass. 1979) (rejecting a "narrow construction of 'damage to the person'"). Thus, Rosario's action falls within the ambit of subsection (d)(2).

2. The City's Indemnification Obligation is a "Liability Bond" Policy

Rosario's entitlement to the relief under subsection (d)(2) also turns on whether his personal injury claims are covered by "a policy of liability bond or liability insurance." Id. § 3-803(d)(2). Rosario argues that because recovery for alleged harm caused by the Deceased Defendants, if available, "will be funded only by [the City]'s indemnification," Doc. No. 40 at 4, such recovery will be pursuant to "a policy of liability bond or liability insurance." The Court recognizes, and the City does not contest, that the City is generally obligated to indemnify municipal officers acting within the scope of their employment. Mass. Gen. Laws ch. 258, §13. However, the City argues that "[n]o reasonable reading of [subsection (d)(2)] can result in a conclusion that it is intended to apply … to the City based on its indemnification obligations." Doc. No. 45 at 15.

Contrary to the City's objection, the City's statutory indemnification obligation is a "policy of liability bond" for purposes of subsection (d)(2). The term "liability bond" is not defined in the statute itself; thus, the Court presumes that the legislature intended "to use the term in its ordinary sense." Casey v. Mass. Elec. Co., 467 N.E.2d 1358, 1362 (Mass. 1984). At its most elementary, a bond is simply a "written promise to pay money or do some act if certain circumstances occur." Black's Law Dictionary 200 (Bryan A. Garner ed., 9th ed. 2009). A "liability bond" is a "bond intended to protect the assured from a loss arising from some event specified in the bond." Id. at 201. Critically, in determining whether the City's indemnification obligation is a liability bond for purposes of the statute, the Court "disregard[s] nomenclature and look[s] at the substance of the bond itself," noting that "it makes no difference whether a

6

bond is designated by that name or by some other, if it possesses the characteristics of a bond."

1 Silvester E. Quindry, Bonds & Bondholders Rights & Remedies § 2, at 3-4 (1934).

> The City is bound by statute to:
>
> indemnify and save harmless municipal officers . . . from personal financial loss and expense including reasonable legal fees and costs, if any . . . arising out of any claim, demand, suit or judgment by reason of any act or omission, except an intentional violation of civil rights of any person, if the official at the time of such act or omission was acting within the scope of his official duties or employment.

Mass. Gen. Laws ch. 258, § 13. Upon ratification by the City, this provision became municipal policy: a written promise to protect its employees from losses arising from specified events.[4] Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *14 n.14 (D. Mass. Sept. 7, 2017). The absence of the word "indemnification" from the statute is of no moment; rather, the statute's terms are capacious enough to include the types of policies that the legislature expressly envisioned. See, e.g., St. George's Ebenezer Primitive Methodist Church of Methuen v. Primitive Methodist Church of U.S. E. Conference, 52 N.E.2d 401, 403–04 (Mass. 1943) ("The Legislature in using a term capable of varying shades of meaning must be understood to have adopted the particular meaning that best served its purpose and aim in enacting the statute."); Lehan v. N. Main St. Garage, 45 N.E.2d 945, 947 (Mass. 1942) ("If a liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the purpose indicated by the

---

[4] The City contests the eventual availability of indemnification, noting that under Massachusetts law it is "not required to indemnify a public employee from losses resulting from intentional violations of civil rights." Doc. No. 45 at 16. This objection, however, raises issues beyond the scope of the instant motion. For present purposes, the Court accepts, without resolving, that at least some of the claims advanced by Rosario could require the City to indemnify one or more of the Deceased Defendants. Doc. No. 1 ¶¶ 175–76, 187–88, 195–98 (alleging failure to intervene, negligence, and negligent infliction of emotional distress); see also United States v. Pagan-Ferrer, 736 F.3d 573, 593 (1st Cir. 2013) (holding that a supervisor can be held liable for his failure to intervene when his action or inaction could be characterized as "gross negligence amounting to deliberate indifference").

7

words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose."). Here, the legislature allowed personal injury plaintiffs to proceed against decedents when they are protected by precisely the sort of written promise that the City gives to its employees. Thus, the City's indemnification obligation must be understood as "a policy of liability bond" within the meaning of subsection (d)(2).[5]

At least two additional reasons support the Court's determination that the City's indemnification obligation falls within the purview of subsection (d)(2). First, an alternative reading would provide a windfall to municipalities whenever their employees cause personal injury or death but pre-decease the expeditious filing of a lawsuit, thus visiting grave injustice on injured parties. See Nutter v. Woodard, 614 N.E.2d 692, 695 (Mass. App. Ct. 1993) ("For us to rule against [the plaintiff] in these circumstances would be to allow the insurer [or bond provider] a windfall due to the fortuity that there was but one potentially negligent party for [the plaintiff] to sue."). Second, the legislative concerns that justify a shorter statute of limitations for claims against decedents have no force when municipal indemnification, rather than the assets of an estate, will support a final judgment. See, e.g., Doyle v. Moylan, 141 F. Supp. 95, 97 (D.

---

[5] By contrast, the City's indemnification obligation is not a policy of "liability insurance." While Massachusetts courts have held that some government indemnification obligations should be treated like insurance policies, they have done so only when the government entity in question has both a duty to indemnify *and* a duty to defend its employees. See Maimaron v. Commonwealth, 865 N.E.2d 1098, 1105 (Mass. 2007) (holding that the Commonwealth of Massachusetts stands in the shoes of an insurer when it "shall provide for the legal representation" of accused state police officers pursuant to Mass. Gen. Laws ch. 258, § 9A); Joyce Frank, Case Comment, Indemnification Under the Massachusetts Tort Claims Act: Government As Insurer—Maimaron v. Commonwealth, 449 Mass. 167 (2007), 92 Mass. L. Rev. 37, 41 (2009) ("Unlike some of its counterparts, [section 9A of the Massachusetts Tort Claims Act] read[s] somewhat like an insurance policy, at least in terms of addressing separate duties to defend and indemnify."). Here, the City has *only* the duty to indemnify its employees under certain circumstances.

Mass. 1956) (noting that the Massachusetts legislature truncated the statute of limitations to "facilitate the prompt settlement of estates"); accord Hanna v. Plumer, 380 U.S. 460, 463 n.1 (1965). Therefore, the Court eschews a "construction . . . that would lead to an absurd and unreasonable conclusion," adopting instead "a construction that would lead to a logical and sensible result." Arlington Contributory Ret. Bd. v. Contributory Ret. Appeal Bd., 914 N.E.2d 957, 963 (Mass. App. Ct. 2009) (quoting Bell v. Treasurer of Cambridge, 38 N.E.2d 660, 664 (Mass. 1941)).

### 3. Additional Requirements for Relief Under Subsection (d)(2)

Notwithstanding the Court's conclusion that the City's indemnification obligation may give rise to relief under subsection (d)(2), Rosario is not presently entitled to proceed nominally against the Deceased Defendants by serving process on the City. This is so for two reasons. First, at a hearing on this motion, Rosario's counsel informed the Court that it "appear[s] that [three of the Deceased Defendants] have estates, which are not closed," and that "two of them had a personal representative." Doc. No. 48 at 23. In such a circumstances, the statute specifically provides for Rosario to bring his personal injury action "against the [Deceased Defendants'] personal representative[s]," subject to two further limitations: (1) that he commence his action within three years of its accrual; and (2) that "a judgment recovered" in the action "shall only be satisfied from the proceeds of a policy of liability bond or liability insurance, if any, and not from the general assets of the estate." Mass. Gen. Laws ch. 190B, § 3-803(d)(2).[6] If a judgment is eventually entered, the City may be required to "indemnify and save

---

[6] In this motion, the parties do not dispute the timeliness of Rosario's action. Similarly, they do not contest that he maintains his action only to the extent that his claims implicate the City's indemnification obligations. Moreover, there is no dispute that Rosario does not seek recovery from the estates of the Deceased Defendants.

9

harmless" the personal representatives of the Deceased Defendants "from personal financial loss and expense including reasonable legal fees and costs." Mass. Gen. Laws ch. 258, § 13. However, the statute makes clear that appointed personal representatives are the proper parties for Rosario to serve with process, not the City.

Second, Rosario's counsel represent they have been unable to locate a personal representative or estate for at least one of the Deceased Defendants. Subsection (d)(2) provides for precisely this circumstance: In the absence of a personal representative—and when a plaintiff's claim otherwise meets the requirements enumerated in the provision—a plaintiff may maintain a personal injury action without the appointment of a personal representative "by naming the decedent as the defendant." Mass. Gen. Laws ch. 190B, § 3-803(d)(2). In such instances, "any service of process that may be necessary shall be made upon the entity providing the insurance or bond." Id. Here, the Court has established that the City is "the entity providing the . . . bond." Id. However, the Court is unable to determine, on the record before it, that personal representatives or estates for the remaining Deceased Defendants do not exist. Thus, Rosario's request for relief under subsection (d)(2) is premature.

III. CONCLUSION

Accordingly, Rosario's Motion Regarding Deceased Defendants (Doc. No. 39) is DENIED. If Rosario requests leave to serve the City under subsection (d)(2), he shall file a

harmless" the personal representatives of the Deceased Defendants "from personal financial loss and expense including reasonable legal fees and costs." Mass. Gen. Laws ch. 258, § 13. However, the statute makes clear that appointed personal representatives are the proper parties for Rosario to serve with process, not the City.

Second, Rosario's counsel represent they have been unable to locate a personal representative or estate for at least one of the Deceased Defendants. Subsection (d)(2) provides for precisely this circumstance: In the absence of a personal representative—and when a plaintiff's claim otherwise meets the requirements enumerated in the provision—a plaintiff may maintain a personal injury action without the appointment of a personal representative "by naming the decedent as the defendant." Mass. Gen. Laws ch. 190B, § 3-803(d)(2). In such instances, "any service of process that may be necessary shall be made upon the entity providing the insurance or bond." Id. Here, the Court has established that the City is "the entity providing the . . . bond." Id. However, the Court is unable to determine, on the record before it, that personal representatives or estates for the remaining Deceased Defendants do not exist. Thus, Rosario's request for relief under subsection (d)(2) is premature.

III. CONCLUSION

Accordingly, Rosario's Motion Regarding Deceased Defendants (Doc. No. 39) is DENIED. If Rosario requests leave to serve the City under subsection (d)(2), he shall file a

motion with the Court supported by evidence sufficient to establish the absence of a personal representative.[7]  The parties shall also file a joint status report within twenty-one days.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[7] If the Court allows Rosario to proceed in this fashion, there will be no conflict of interest for the City.  In such a scenario, service of process will merely place the City on notice that its indemnification obligations—including its duty to compensate for "reasonable legal fees and costs"—could ultimately be implicated.  Mass. Gen. Laws ch. 258, § 13.  Unlike instances in which a government actor stands in the shoes of an insurer, and thus has an accompanying duty to defend its employees, see supra note 5, the City's only obligations here—aside from carrying out its own defense as a party in this action—are to protect its fisc and to meet any other obligations under section 13 of the Massachusetts Tort Claims Act.