1                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
2

3    - - - - - - - - - - - - - - - - - - x

4    VICTOR ROSARIO,                    :

5         Plaintiff,                    :    Civil Action No.
                                             1:19-cv-10532-LTS
6        v.                             :

7    HAROLD G. WATERHOUSE, et al.,      :

8         Defendants.                   :

9    - - - - - - - - - - - - - - - - - - x

10

11       BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

12

                             MOTION HEARING
13

14

                    Wednesday, September 11, 2019
15                          2:29 p.m.

16

17

18

19

20

     John J. Moakley United States Courthouse
21   Courtroom No. 13
     One Courthouse Way
22   Boston, Massachusetts

23

     Rachel M. Lopez, CRR
24   Official Court Reporter
     raeufp@gmail.com
25

1                           **A P P E A R A N C E S**

2

    On behalf of the Plaintiff:

3

         LOEVY & LOEVY
4        BY:  TARA ELIZABETH THOMPSON
         311 N. Aberdeen Street
5        Third Floor
         Chicago, Illinois  60607
6        (312) 243-5902
         tara@loevy.com
7


8

    On behalf of the named Defendants:

9

         LAW OFFICES OF TIMOTHY M. BURKE
10       BY:  JARED S. BURKE
         160 Gould Street
11       Suite 100
         Needham, Massachusetts  02494
12       (781) 455-0707
         jsburke@timburkelaw.com
13


14

    On behalf of the Defendant City of Lowell:

15

         CITY OF LOWELL LAW DEPARTMENT
16       BY:  ADAM R. LAGRASSA AND RACHEL M. BROWN
         375 Merrimack Street
17       Third Floor
         Lowell, Massachusetts  01853
18       (978) 674-4050
         alagrassa@lowellma.gov
19       rbrown@lowellma.gov

20

21

22

23

24

25

**P R O C E E D I N G S**

1                            **P R O C E E D I N G S**

2                 (In open court.)

3                 THE DEPUTY CLERK:  Today is September 11th, the

4      case of Rosario vs. Waterhouse, et al., civil action 19-10532

5      will now appear before this Court.

6                 Counsel, please identify themselves for the record.

7                 MS. THOMPSON:  Tara Thompson on behalf of the

8      plaintiff.

9                 MR. LAGRASSA:  Good afternoon, Your Honor, Adam

10     LaGrassa on behalf of the City of Lowell.

11                MS. BROWN:  Good afternoon, Your Honor.  Rachel

12     Brown on behalf of the City of Lowell.

13                MR. BURKE:  Good afternoon, Your Honor.  Attorney

14     Jared Burke on behalf of David Coonan.

15                THE COURT:  So let me first clarify one thing.

16                So Ms. Thompson, you represent Mr. Rosario.  The

17     defendants that exist in the sense that they're in the case,

18     they've been served -- they've been served, is the Lowell,

19     the City of Lowell, and --

20                Who do you represent, Mr. Burke?

21                MR. BURKE:  David Coonan.

22                THE COURT:  Mr. Coonan.  And the City of Lowell has

23     been served, and they're here.

24                You represent them, right?

25                MR. LAGRASSA:  Yes, that's correct, Your Honor.

1        THE COURT:  Both of you represent the City?

2        MR. LAGRASSA:  Yes.

3        MS. BROWN:  Yes, that's right.

4        THE COURT:  So the five deceased defendants are

5   Gilligan, right?

6        MS. THOMPSON:  Gilligans is one, Your Honor.

7        THE COURT:  Gilligan is one.  And Newell is a

8   second.

9        MS. THOMPSON:  Yes.

10        THE COURT:  McGarry is a third.

11        MS. THOMPSON:  Yes.

12        THE COURT:  McGlasson is a fourth?

13        MS. THOMPSON:  Yes, Your Honor.

14        THE COURT:  And Myers is a fifth?

15        MS. THOMPSON:  Yes.

16        THE COURT:  Let's put them to the side for a

17   minute.  That also leaves Waterhouse, Giuifoyle, Sheehan,

18   Gentle, and Dow.  And unknown officers of Lowell and

19   Massachusetts State Police.

20        As to those identified defendants who you haven't

21   listed as deceased, what's the status of service on them?

22        MS. THOMPSON:  My understanding is that all of

23   those defendants have been served.  I think there's been some

24   communications between my co-counsel and others about

25   who's --

1          THE COURT:  Who's that?

2          MS. THOMPSON:  I'm sorry?

3          THE COURT:  Who's the cocounsel?

4          MS. THOMPSON:  Mark Reyes and Steve Art.  They work

5   for my firm, as well, but they have been involved in these

6   communications, not me, about who is going to represent them.

7   I think this is becoming an issue of default and that's

8   something we intend to address, but I think they've all been

9   served.

10          THE COURT:  So as to the -- we have three

11   defendants who've appeared.  We have five over here, deceased

12   defendants, we're going to talk about in a minute.  We have

13   the named individuals I just listed, who you believe -- you

14   think you've served all them and then in the end -- not in

15   the end, relatively soon, either you would anticipate motions

16   for default, or you think if there were communications, maybe

17   those will lead to somebody appearing or something.

18          MS. THOMPSON:  Yes, Your Honor.

19          THE COURT:  Okay.  And the two of you are not

20   representing those nondeceased, named defendants at this

21   time.

22          MS. BROWN:  That's right, Your Honor.  And there

23   have been some communications with --

24          THE COURT:  And do you anticipate representing

25   them?

1          MS. BROWN:  The City doesn't anticipating

2     representing them, because there's a clear potential conflict

3     of interest.

4          THE COURT:  Right.

5          MS. BROWN:  Ordinarily in these cases, the union

6     represents police officers and firefighters.  However,

7     because the case calls on events that were so old, the --

8     none of them are in the unions anymore.  There's questions

9     about whether it's the same union.  There is -- I don't want

10    to speak for the union, but there is some reluctance to

11    represent these --

12         THE COURT:  Former members.

13         MS. BROWN:  -- former members, yeah.  So where we

14    are working at trying to facilitate discussions and trying to

15    come up with a solution, I know that there's still a matter

16    of service on some of the defendants, so we -- you know, we

17    asked plaintiff's counsel to hold off on filing for default

18    while we --

19         THE COURT:  I think you should try to -- right.

20    That makes sense.  Try to work out these questions before

21    just moving for -- if there's a service issue, you guys

22    should talk about it and solve that service issue, if you

23    can.  If it's a potentially material issue.  And then if that

24    other issue is what it is and they have to figure that out

25    and the like.  Okay.

1          Anything else about that?

2          MS. THOMPSON:  No, Your Honor.

3          THE COURT:  Okay.  So let me tell you what I'm

4    thinking about about the five deceased defendants.  It -- and

5    then you can comment on it.  I think this will make this

6    quicker and simpler.  I'm thinking in the following ways and

7    some of this I have some questions for you, Ms. Thompson.

8    I'm correct that the plaintiff is proceeding against these

9    five deceased defendants only if -- only to the extent that

10   it can recover monies from them -- from the City by way of an

11   indemnification.

12         MS. THOMPSON:  I see no other method of recovery

13   against those deceased persons, Your Honor.

14         THE COURT:  But in other words -- but that's -- but

15   then you become limited to.

16         MS. THOMPSON:  Yes.

17         THE COURT:  Because the -- in other words, you

18   might proceed against them and win a judgment, but if that

19   judgment is not a judgment to which indemnification lies,

20   then you wouldn't -- if we proceed in one of the ways -- in

21   the way I'm envisioning, which I'll describe in a minute, I'm

22   thinking, then, that you don't get anything.

23         MS. THOMPSON:  I think that's true, Your Honor.

24         THE COURT:  Okay.  So given that, what I'm

25   thinking, in the way that I'm thinking about this, is this:

1   That they've sued these people.  At the moment, there's no

2   motions to dismiss, or anything like that, that I'm

3   resolving.  And it's at least possible that there is a state

4   statute that provides for indemnification of officers in

5   certain circumstances.  And if they win and if they win on a

6   theory that gives rise to indemnification, even if the City

7   is not -- if the City is found not liable as a defendant, but

8   one of these deceased officers is liable and is liable on a

9   theory that gives rise to indemnification, then the City has

10  to indemnify.  And I'm not saying that they're going to win

11  and I'm not saying that all their theories give rise to

12  indemnification, but if -- you would agree with me that if

13  they win against a deceased officer and if they win on a

14  theory for which there is indemnification, then the City has

15  to indemnify.  Seems fairly obvious, right?

16          MS. BROWN:  Yes.  Except that I believe the

17  theories in this case are such that --

18          THE COURT:  Don't give rise to indemnification, but

19  that's not disputing what I've just said.

20          MS. BROWN:  No.

21          THE COURT:  That's simply saying that you don't

22  think they can -- I don't think they can win on a theory that

23  gives rise to indemnification, or they have no theory that

24  gives rise to indemnification.

25          So the way that I'm thinking about that is this:

 1     That what this has put -- this motion is putting at issue is

 2     the question of whether the state statute would apply in

 3     circumstances such as this.  And I'm thinking that the state

 4     statute would apply in circumstances such as this and that

 5     the representative that I -- because I'm thinking that the

 6     indemnification is like insurance.  I understand it's not the

 7     word they used, but that it's like insurance, and that -- and

 8     that since any recovery, if there is a recovery, both in the

 9     sense that winning against a deceased defendant and winning

10     on a theory that gives rise to indemnification, the recovery

11     would have come from the City, that then the proper thing to

12     do under that statute is appoint like the City clerk the

13     representative.

14            It doesn't raise conflict issues in the same way, I

15     don't think, but that's one of my questions, because the City

16     isn't defending the person generally.  It's only with respect

17     to a claim -- they're the real -- to the extent there's

18     something here, you're the real party in interest, because

19     the only thing you'd be -- that's at stake is something that

20     gives rise to indemnification.  Because that's all that they

21     could recover against you and it may be that -- and then the

22     question of whether the complaint -- whether there is

23     indemnification would raise the following questions, (a), is

24     there a claim that could give rise to indemnification.  That

25     seems more properly joined on either a motion to dismiss, or

1   a motion for a judgment on the pleadings.  I'm not sure that

2   I'm persuaded on this motion, on this record, to conclusively

3   say it's not legally possible for them to have a claim for

4   which they receive indemnification.

5        That issue could arise relative -- potentially

6   relatively early again.  But it can certainly re-arise, no

7   matter what, at a motion for summary judgment, at trial or

8   jury instructions.  I mean, all the way through.  And it -- I

9   suppose bleeds into the question of whether, if -- I went

10  down this road, you should have to -- if the defendant is

11  defaulted or something like that, with respect to all

12  theories for which there isn't indemnification, or what we

13  would do about those, because I don't think the City has to

14  defend.  It's a question for you.

15       Do they -- are they -- they're not the

16  representative with respect to other theories, right?

17  Suppose it was simple.  You had two claims and let's just say

18  you both agreed claim one, no indemnification, and claim two,

19  if you win indemnification.  I understand it's not that

20  simple.  But if it were, I would appoint them as a

21  representative for the claim for which there is

22  indemnification and then what would happen to the other

23  claim?

24       MS. THOMPSON:  If I'm understanding the Court's

25  question, I mean, I don't think there -- I mean, I guess it's

1    a claim, for one, that we wouldn't really be able to pursue

2    at trial, because there's no recovery that's possible.

3             THE COURT:  Right.  You could take discovery.

4             MS. THOMPSON:  Sure.

5             THE COURT:  Or they could take discovery.  They

6    might want to prove that it was the claim for which there was

7    no indemnification, or they might want -- but you're right, I

8    think at trial, you couldn't prove that claim, couldn't try

9    to prove that claim.

10            MS. THOMPSON:  I think that's right.

11            THE COURT:  And it would be -- so either that, in

12   the end, is going to go away by like a dismissal of some

13   sort, or default, because you can't obtain judgment at trial

14   on that claim and you're conceding, at least with respect to

15   the City being the representative, that they're not -- I

16   guess it's a separate -- beyond the scope of today, but you'd

17   have to think about that because they're not served and I'm

18   not sure service -- right?  I don't think the deceased -- you

19   haven't served the deceased defendants yet.

20            MS. THOMPSON:  Correct, Your Honor.

21            THE COURT:  Right.  There's nobody to serve.  And

22   if I appointed the City clerk, their appearance or

23   appointment wouldn't encompass the things for which they're

24   not liable for indemnification.

25            MS. THOMPSON:  Understood.

1          THE COURT:  I think, right?  You're not asking for

2     that, I don't think.

3          MS. THOMPSON:  No.  And they're the only -- as the

4     Court said, they're the only real party in interest for those

5     claims.

6          THE COURT:  For only something for which they

7     indemnify.  So they're not really here, if they were here in

8     that capacity, which they're not yet.  They wouldn't be in

9     that capacity for those other things.  So in the end, those

10    are the theories and the claims.  So for those other theories

11    and claims, in the end I think they would have to be like

12    resolved in some way by a dismissal without -- some sort of

13    dismissal on my own or your initiative, for lack of service

14    or -- they haven't -- I can't default them, these defendants,

15    because you haven't served them.  You'd have to find somebody

16    else to serve for those other things to lead to a default, or

17    I think I'd eventually dismiss them for lack of service.

18          So given that posture, that, (a), narrows -- that

19    eliminates a lot of the issues that you raised about

20    appointment, like conflict, I think, but we'll get to your

21    biggest issue last.

22          MS. BROWN:  Yeah.

23          THE COURT:  But how is there -- in that scenario,

24    framed that way, why is there a conflict?

25          MS. BROWN:  Should we -- can we both respond,

 1   because we're getting it for the first time?

 2            THE COURT:  Yes.  That's fine.

 3            MS. BROWN:  I guess as you were talking, I had a

 4   few thoughts.  I think I would just say initially, I'm not

 5   sure why the plaintiffs can't make some efforts to make

 6   proper service.  It doesn't appear -- I mean, there is a

 7   track for doing that and it doesn't appear that they've taken

 8   the steps.  They've moved sort of quickly to the City clerk

 9   idea.  And I guess I wonder what authority the appointment

10   would come under.  Perhaps it's just discretionary.

11            THE COURT:  The state statute.  In other words,

12   this is the way that I think about it.  They sued somebody,

13   they sued an individual for an accident, the person's dead.

14   There's an auto insurance policy.  Assuming they make the

15   predicate that they can't find an estate or what have you,

16   and questions as to whether I shouldn't require them to file

17   affidavit to that effect, as to what they've done or whether

18   it's sufficient.  But I would appoint the insurance company

19   as the personal representative -- not for all claims against

20   that person, or necessarily even all -- let's say there was a

21   question of whether it was negligence or intentional and the

22   insurance policy excludes intentional.  I'd appoint them --

23            MS. BROWN:  So for the scope of the policy.

24            THE COURT:  I would appoint them under the state

25   statute to be the representative only with respect to the

1    claim for which they might be liable and -- under the policy.

2           MS. BROWN:  If this were to go forward, most of

3    their claims are intentional violations of civil rights

4    claims, which are not covered under the state statute.  So we

5    would potentially move to dismiss those claims that --

6           THE COURT:  Well, I think what you would really

7    move, you wouldn't be representing -- like take Mr. Newel,

8    just by way of example.  If I appointed you, the appointment

9    would only be -- I think this is the way it plays out.  And

10   I'm thinking out loud here, but the appointment is of you or

11   the City for Mr. Newel, is only to the extent of claims or

12   theories that do or potentially implicate indemnification.

13   If now, as to Mr. Newel, there is a claim that plainly, in

14   your view, account -- that plainly is only -- that cannot

15   possibly lead to indemnification because of its terms, all

16   right?  Then to it seems to me you'd go to plaintiff's

17   counsel and if plaintiff's counsel agreed that that one,

18   there is no indemnification for that, you would file a

19   stipulation with me that that one is outside the scope of the

20   indemnification, just to clarify what you are and aren't --

21   the City clerk is or isn't responsible for.

22           If you disagreed, then at that point, it's up to

23   them.  They're either -- I'm either going to dismiss that

24   claim eventually for lack of service, or they're going to

25   find somebody to serve and I will -- then they'll default

them or they'll appear.  And I don't think you'd actually move to dismiss it, because it wouldn't be lodged -- you would be clarifying whether it's within the scope of your appointment.

On the other hand, if the two of you disagree, I would rule.  You tell me that.  And then I would either decide, yes, if they win it, you're on the hook for it, or no, it's totally outside.  It's not -- and you're right and it falls into what I've already described.  Or I might say, hmm, it depends on the facts, and right now it could be and it might not be.  So you're on the hook for it if it turns out you're on the hook for it.

MS. BROWN:  So I guess I wonder how we would defend it.  So for example, there are allegations of coerced confessions.  And so, you know, if I were just representing the officer, you know, I would be trying to make the best argument probably that he was following procedures --

THE COURT:  You would be wanting to say he didn't do anything wrong and, if he did, it's within the scope of the indemnification.

MS. BROWN:  Yeah.  Whereas the City might view it quite differently, you know, that the policies point towards behaving in a certain manner and he went beyond that and I just don't know how --

THE COURT:  In other words, now you'd be -- well,

1    you're not really -- oh, I see.  So in other words, now, if

2    you're appointed to represent him, to the extent of

3    indemnification.  You have, on the one hand, the interest of,

4    like, saying he did coerce the confession, because if it were

5    intentionally coerced, it would arguably be outside

6    indemnification and the City, your other client won't have to

7    pay.  And you don't have to worry about him, because you're

8    only -- you're not his lawyer-lawyer.  You're just his lawyer

9    with respect to the indemnified claims.  And so --

10             MS. BROWN:  Yeah, I just don't -- I feel like at

11   least we would need further briefing on it.

12             THE COURT:  That's an interesting question.  Yes, I

13   see that point.

14             MS. BROWN:  I don't know if you wanted to add

15   something, too, because Adam was going to argue the motion.

16             MR. LAGRASSA:  To me it just seems like it's

17   inherently going to lead to some sort of conflict.  I don't

18   see how it doesn't.  I mean, I'm just considering it for the

19   first time now, but -- and also, I'd go back to what Attorney

20   Brown said.  It's unclear why we would go to this, when

21   there's another avenue that --

22             THE COURT:  Which is?

23             MR. LAGRASSA:  Which would be for them to locate

24   and identify a proper party, which would be either a former

25   legal representative, to the extent one exists, or a

1    successor.  That's what's contemplated under Rule 25.

2           THE COURT:  But essentially, like no one disputes

3    that they're dead, right?

4           MR. LAGRASSA:  No.

5           MS. BROWN:  No.

6           THE COURT:  Okay.  So they're dead.  So they either

7    died without -- it's possible there's an executor of the

8    estate, right?  And it's possible there was an executor of

9    the estate at the time the person died, that they had a will,

10   and the will designated an executor and that would be the

11   person who would appear -- who would be responsible for

12   finding a lawyer to represent the estate, assuming it

13   existed, right?  Is that right?

14          MS. THOMPSON:  Could I be heard briefly on that

15   point?

16          THE COURT:  Yeah.

17          MS. THOMPSON:  In the interest of candor, I do want

18   to add something to the record, to make sure that we've

19   conveyed all the information that's available to the Court.

20   I was not the person in our office that looked for these

21   estates.  But after we saw the defendants' response, where

22   they identified some of these obituaries, I did go back and

23   check those.

24          And in the interest of candor, I can report that

25   there's still two of these five people that I cannot find an

1    estate for.  I have done some searching and cannot locate an

2    estate, but three of them, it does appear that they have

3    estates, which are now closed, which were probated in

4    Middlesex County.  Two of them had a personal representative

5    and one of them had an executor.  I don't think -- none of

6    those estates are open, as far as I can tell, but we do have

7    three estates here.  And I can explain why I don't think that

8    matters, but in the interest of candor, I --

9              THE COURT:  Why doesn't it matter?

10             MS. THOMPSON:  Because it's exactly what the Court

11   said, which is we have the real party in interest here.

12             THE COURT:  Well, but suppose -- okay, so take one

13   of those three.  Why can't you serve those people with the

14   claim, with the complaint?  Then they have to -- I think they

15   have to respond -- assuming you can find -- assuming that

16   person's alive -- and how long ago did these people die?

17             MS. THOMPSON:  Some of them are some time ago, some

18   of them are a couple of years ago, but a couple of them are

19   from like the mid 2000s.  And I haven't done all of the

20   research, but it looks like we're talking about, you know,

21   widows and sons, essentially, as executors and personal

22   representatives.

23             THE COURT:  Sure.  So you serve the -- assuming the

24   person who was the executor or the personal representative is

25   alive, you can serve that person.  Wouldn't that person,

1     under the law, be responsible for hiring a lawyer responding

2     to the complaint?  Because it's a claim against the estate.

3     And to the -- and notifying insurance if there was relevant

4     insurance, or what have you.  They don't have to notify the

5     City, because you've done that, but wouldn't that be correct?

6           MS. THOMPSON:  The issue is it doesn't make sense

7     to do that.  I mean, certainly we can go and try to figure it

8     out --

9           THE COURT:  What you're saying is it's practically

10    fine.  The estates have nothing in them now, given when these

11    people die, and the estates are closed, that it's -- the only

12    reasonable inference is that whatever assets they had were

13    distributed to the beneficiaries and so the estate is no

14    longer solvent and it has nothing.  It's closed.

15          And so you serve that person and that person would

16    do -- assuming they're alive, would do one or two things.

17    They would either go that's nice and throw it in the trash,

18    right?  And then you could default them.  Okay.

19          Or you -- the person is more meticulous and they

20    call you up, they hire a lawyer, they have a friend who is a

21    lawyer who responds.  But that person is not going to

22    litigate the case, because no one is going to pay that

23    lawyer -- well, they're not going to pay that -- the estate

24    is not going to pay the lawyer to litigate the case, because

25    the estate doesn't have any money.  Right?  So functionally,

1    we -- the likely outcome is that leads to a default.  And

2    unless the union decides to represent them, but if the union

3    does, the union is either -- they all sort of -- deceased or

4    not, they're probably all in the same situation and maybe a

5    little different.  The union might feel a little different

6    about people who are alive than dead, because they might have

7    a little bit at stake financially.  So it -- in the end of

8    that outcome is the union represents, or it's a default,

9    right?  It's hard to see how it ends up in any other way.

10           MS. THOMPSON:  Functionally, you'll end up in the

11   same place, but in the meantime, I, to take a hypothetical,

12   you know, served William Gilligan's widow and made her have

13   to contact a lawyer in order for nothing to, you know,

14   functionally occur that really changes, which is we have the

15   -- if there is any party in interest, it's the

16   indemnification question.

17           THE COURT:  But here's the thing that I'm thinking

18   about.  What is it -- so in that scenario, they're defaulted,

19   when it's all said and done, and you litigate the case.  The

20   scope of discovery.  I can't enter a judgment against them,

21   because you need the trial to figure out damages, right, or

22   at least a hearing?  So we proceed.  They just represent the

23   City.  You get -- if you get a default judgment against --

24   you get a default against Mr. Newel, then liability is

25   established on all your claims and the only question is

1    damages.  Then, actually, aren't you better off?

2         Then they can't contest.  Then the only question

3    between you and indemnification is, (a), do you have any

4    theory, for which -- within your complaint, that's going to

5    be joined one way or another, it becomes jointed, they're

6    going to say you have no theory that leads to

7    indemnification, you say you do.  If you win that, you're

8    done.  You have liability, and then the only question is

9    damages.

10        MS. THOMPSON:  I mean, I see the Court's point.  I

11   mean, I think, as we've argued in our motion, I don't think

12   the law requires us to go that route.  I think we have the

13   real party here.  I mean, I understand what the Court is

14   saying.  I mean, we can go through the steps and do that.

15        THE COURT:  I mean, in a funny way, they should be

16   asking for what you're asking for, and you should be asking

17   for what they're asking for.

18        MS. THOMPSON:  I see the Court's point.

19        THE COURT:  You see what I'm saying?

20        MS. BROWN:  Well, I still don't know how we would

21   practically do it.

22        THE COURT:  If I appointed you.

23        MS. BROWN:  I understand that there may be some

24   advantages to that setup.

25        THE COURT:  Sure.

1          MS. BROWN:  But just in terms of actually sort of
2     defending a deposition or something --
3          THE COURT:  That's what's giving me pause, why
4     I'm --
5          MS. BROWN:  Which lawyer would do it and how would
6     they do it?  It's because we would be representing these
7     people in their individual capacities and not just their
8     official capacities.
9          THE COURT:  That's one of the things -- that's what
10    concerns me about appointing them.  If I do appoint them,
11    then how -- appoint the City clerk, the City clerk gets a
12    lawyer.  The City clerk is going to get the same lawyers,
13    right?  And that's what you're thinking.  But what is the
14    point of the -- what does the appointment accomplish?  In
15    other words, it puts them in this awkward -- potentially
16    awkward position, I think, in terms of conflicts.
17         MS. BROWN:  Possibly more than awkward, I think.
18         THE COURT:  Right.  It might be a professional
19    responsibility issue.
20         MS. BROWN:  Yeah, I don't know that we could do it.
21         THE COURT:  Right.  It's at least awkward.  And the
22    other way might be -- I understand the other way is not nice
23    to the widow, if that's who the executor, or to the child,
24    because their loved one is dead and now they have to read
25    this complaint that accuses their loved one of various forms

1   of misconduct or reprehensible misconduct, right?  And they

2   get that.  And -- but they -- and they might want to defend,

3   because they might feel there's reputational interest at

4   stake.

5           MS. THOMPSON:  But to go back to one thing the

6   Court said, there is no conflict, because the only -- the

7   only way that we can recover against those estates is if

8   there's indemnification and it's obviously in the

9   defendant's -- in Lowell's interest, for instance to argue

10  that there's no indemnification.  I mean, that's the only

11  interest they would have in arguing here, so there's not a

12  conflict --

13          THE COURT:  No, but they have an interest in

14  arguing that you prevail on a claim that doesn't give rise to

15  indemnification.  If one of these defendants went into the

16  room and intentionally beat a confession or coerced a

17  confession out of your client and went in knowing, I'm going

18  to go in there and this is a bad guy and I think he did it,

19  and I'm going to make him confess no matter what, and I'm

20  going to fabricate the evidence if I have to, right?  There's

21  no indemnification for that, is there?

22          MS. THOMPSON:  I mean, I agree that, for

23  intentional conduct, that's where we have a problem.

24          THE COURT:  So their interest, partly, is to defend

25  the City fisk.  And if they could establish that these

1    deceased defendants did it intentionally in that way, then

2    they would be liability on those deceased defendants, but you

3    can -- conceding -- if I act on the motion the way I've laid

4    out, you conceded away that liability and the City would save

5    a pile of money, because there would be no indemnification,

6    so the City's interest would be sort of no liability for

7    anybody, maybe, in the first instance, but secondarily --

8    only intentional liability outside the indemnification

9    against the deceased defendants.  And then -- but that's sort

10   of contrary to like if they were an insurance company, I'm

11   not sure I would think that it's totally kosher for them to

12   say, well, our driver was coming up to the red light and he

13   stepped on the gas intentionally, and no, we don't have an

14   argument that it was negligent.

15            MS. THOMPSON:  But the estate can't have liability

16   in that situation, so there's not a conflict.  I mean, I

17   agree, it's contrary --

18            THE COURT:  Why can't the estate have liability?

19            MS. THOMPSON:  They can't pay anything, I guess, is

20   a better way to put it.

21            THE COURT:  Yes, but there's liability.

22            MS. THOMPSON:  But that's not a conflict in a

23   situation where they will never have to pay any damages

24   award.  It's not a conflict for there to be -- because it is

25   a legal fiction, Your Honor.  It's a legal fiction for an

1    estate to be liable for something when --

2            THE COURT:  But why do you -- so I guess there's

3    two questions.  One, I'm not sure, I would have to think

4    about that.  But I can imagine reputational -- I don't know

5    if reputational interests survive.  But the other is, why do

6    you care if they're here?  And I get it, it would be simpler

7    for you for me to allow the motion today, then for you to

8    have to go serve these people.  But other -- and find them

9    and serve them.  But other than that, why do you care?

10           MS. THOMPSON:  I mean, it is -- it is a question of

11   we shouldn't have to take that step, which I guess boils down

12   to a -- I mean, I think it's more than convenience, but let's

13   put it in that category, but that doesn't really answer the

14   question for all of these people, because we have two

15   additional people, one of whom I think the defendants

16   couldn't find an obituary for, I can't either.  And the other

17   person --

18           THE COURT:  How do we know he's dead?

19           MS. THOMPSON:  I'm sorry?

20           THE COURT:  How do we know he's dead?

21           MS. BROWN:  Plaintiffs represented he was dead, I

22   believe.

23           THE COURT:  No one can find an obituary?

24           MS. THOMPSON:  I think we've determined he's

25   deceased, but I confess, I don't know why we can't find an

1    obituary.

2              THE COURT:  All right.

3              MS. THOMPSON:  But I can't find an estate either.

4    Mr. McGlasson, it appears from the obituary that the

5    defendants found, that he died in Lowell, but there is not a

6    Middlesex estate for him, which would lead me to believe

7    potentially one was never opened, although I can look into

8    that a little further.  So I think we have these two people

9    that are not going to get resolved by I think us having to go

10   back.  Although, we can make -- if it's a question of us

11   making a showing that we tried, obviously we can do that,

12   too.

13             THE COURT:  So the issue is joined, you're saying,

14   assuming you make the showing as to those two, no matter

15   what.

16             MS. THOMPSON:  I think so.

17             THE COURT:  And as to those two, you care because,

18   short of me appointing them to represent the estate, you

19   can't proceed against that deceased defendant, because you

20   can't -- you haven't served the deceased defendant.

21             MS. THOMPSON:  And we don't want an empty chair is

22   the other issue for that.

23             THE COURT:  Well, you couldn't even have the chair,

24   because -- right?  Because if you don't serve somebody, there

25   would be no lawsuit.

1              MS. THOMPSON:  Right.  And I think we don't want --
2     I mean, this is hypothetical at this point, but we don't want
3     the defendant saying, oh, well, it's all Mr. McGlasson's
4     fault and he's not in front of the jury in any way.
5              THE COURT:  No, but I think you don't -- I guess
6     the thing that I'm thinking about is you wouldn't get there,
7     because if you have somebody who you can't find and you've
8     never served and no one -- and if I don't appoint someone to
9     represent a real party in interest, them or whomever, then
10    how does the case go forward against that defendant?  You
11    could never -- you wouldn't get to trial on that defendant.
12    They could still blame that person, because there would be
13    facts about them, but they wouldn't be a party.
14             MS. THOMPSON:  Exactly.  And then they could, in a
15    hypothetical situation, tell this jury, it's the fault of the
16    person who's not here.  So if you want to blame somebody,
17    blame the guy who's not here, which creates a liability hole
18    for us as a plaintiff.
19             MS. BROWN:  Well, that means there would have to be
20    the evidence.
21             And one other point, just to -- I'll throw in
22    there.  There does seem to be a lot of uncertainty, maybe,
23    with a couple of exceptions, as to what everyone's roles were
24    in this, and what.  So I wonder whether there might be room
25    for a sort of limited amount of discovery.  I mean, it may be

1    that some of these people aren't really all that important to
2    the case.  I mean --
3              THE COURT:  You mean it might just go away?
4              MS. BROWN:  I don't know that.  But the complaint
5    is -- it doesn't really give a lot of information about the
6    particular individuals, who did what when.  It just makes a
7    broad allegations about officers.  And so, you know, it seems
8    to me possible that some of these people may end up just not
9    really featuring all that much, so it's just another --
10   another consideration.
11             THE COURT:  Anything else either of you have -- any
12   of you have on this issue?
13             MS. THOMPSON:  I think the Court understands our
14   position.
15             MR. LAGRASSA:  Just one other sort of procedural
16   issue, Your Honor.  So currently the deceased individuals
17   that are named, they're not viable, legal entities.  So --
18             THE COURT:  What do you mean by "not viable, legal
19   entities"?
20             MR. LAGRASSA:  We've cited cases that suggest that
21   you can't bring a claim against them and that substitution
22   wouldn't be available to a plaintiff who brought a claim
23   against a prior deceased defendant.  So technically there's
24   those five -- the claims against those five individual
25   defendants.

1          THE COURT:  That's a Rule 25 argument.

2          MR. LAGRASSA:  Right.  That is under Rule 25, which

3     I assume would be the avenue for appointing a personal

4     representative.

5          THE COURT:  Right.  I don't think that Rule 25

6     necessarily applies, but I think the state statute might

7     apply, and would allow the appointment the way it would allow

8     the appointment if they were an insurance company.  And I

9     don't think -- maybe isn't exactly the meaning, but I think

10    they are viable, legal entities, the deceased defendants,

11    because no one has told me why you can't sue an estate.  It

12    seems to me that if you commit a tort and you die, I don't

13    think the tort evaporates with you.  And so the claim lies

14    against your estate, but the liability can't be inherited, I

15    don't think, but I assume to the extent the estate has

16    assets, you can sue the estate and make claim against the

17    estate, and go to probate court, and appoint a representative

18    or what have you, or under the state statute.

19          The issue here, is, of course, everyone thinks,

20    probably reasonably, that there's nothing in the estates.

21    And so it's not -- there's no money there.  But I think that

22    what I'm thinking is I could appoint -- they are viable,

23    legal defendants.  These defendants in the form -- deceased

24    defendants in the form of their estates and that I could

25    appoint potentially, under -- not Rule 25, because I think

1   you're right, Rule 25 would only apply if they were first in

2   the case.  But Mr. Burke's client, god forbid he should die,

3   then Rule 25 might apply.

4          But why wouldn't -- the state statute is what I'm

5   thinking about.

6          MR. LAGRASSA:  Could I address some of the

7   arguments that we've raised about the applicability of that

8   statute?

9          THE COURT:  Yeah.

10          MR. LAGRASSA:  So that statute applies to

11   creditors.  I mean, the City is not a creditor to Mr. Rosario

12   just by virtue of him filing a lawsuit.  I understand there

13   are certain parallels, but I just don't see --

14          THE COURT:  I don't think insurance companies are

15   creditors.  I think it applies -- well, I don't know what you

16   mean by that.

17          MR. LAGRASSA:  Well, the statute applies to

18   creditor claims against estates.  That's the purpose of it.

19   And the purpose of the statute is to provide for a short

20   limitations period to facilitate the quick resolution or

21   closing of estates.  That's not what this case is.  They're

22   using that as an avenue --

23          THE COURT:  Suppose a person is driving down

24   Seaport Boulevard today and gets in a car accident.  The

25   statute of limitations is three years to bring lawsuit,

1    right?  I think.  Let's just say it is.

2                MR. LAGRASSA:  Right.

3                THE COURT:  Okay.  And the person who's likely

4    negligent, if there's negligence on the two-car accident, in

5    a year, dies.  All right?  The injured party still has two

6    more years to sue.  They can sue -- let's say the person who

7    died, they had an auto insurance policy, because they

8    followed the law and it's mandatory and they had a policy.

9    They had zero -- they had no estate, they had zero assets,

10   they had nothing.  Nothing was probated because they didn't

11   have anything and they had no will.  And the plaintiff could

12   sue and then invoke the state's statute.  It's not determined

13   that they have a claim.  They have a potential claim, right?

14   They might lose the lawsuit.  But I think they could -- and

15   then the insurance company would be appointed to represent

16   the deceased defendant driver, right?

17               MR. LAGRASSA:  Right.

18               THE COURT:  So I'm thinking it's not a determined

19   claim.  It may be that when it's all said and done, the jury

20   decides that that plaintiff loses, that they didn't establish

21   negligence, and so at most all they are at that point is a

22   potential creditor.  That's at most what the plaintiff is

23   here.  That's why I'm thinking about the state statute by

24   analogy, and allowing it.

25               MR. LAGRASSA:  I guess the concern is I don't think

1    when that statute was drafted there was any intent for it to
2    apply to a municipality in this way.
3                   THE COURT:  Why?
4                   MR. LAGRASSA:  I mean, it's -- there's certain
5    parallels between --
6                   THE COURT:  Why do you think that's so?
7                   MR. LAGRASSA:  I think if the legislature intended
8    that, they probably would have said that explicitly and not
9    just limit it to holders of a liability or bond policy.
10                  MS. BROWN:  We're not aware of any -- any case law
11   or any other --
12                  THE COURT:  Authorizing it.  Are you aware of any
13   case law saying no?
14                  MS. BROWN:  No.  It seems like a --
15                  THE COURT:  First impression.
16                  MR. LAGRASSA:  It's possible that this is the first
17   time that it's been attempted to be applied in this way.
18                  THE COURT:  All right.
19                  MS. BROWN:  But there is case law.  I don't have it
20   with me, but we could -- I'm a little worried about the
21   lumping together of the insurance and the indemnification.
22                  THE COURT:  Sure.
23                  MS. BROWN:  Because I don't think they function
24   exactly the same way.  And there is case law, for example,
25   warning cities against -- so say we just found a lawyer for

1    these people and paid another lawyer to -- and then it was

2    determined that, you know, the liability -- say liability

3    were approved, liability falls outside of what the City would

4    indemnify, so then we're in this position where we need to

5    try to recoup money.  And Courts have, according to the City

6    solicitor, who wanted to be here, but had a personal

7    emergency, have advised that the City should not enter into

8    that sort of financing.  So -- and whereas an insurance

9    company, you know, probably would have provisions.  And it

10   has very sort of stated provisions as to when and where money

11   is outlied --

12           THE COURT:  Here's the thing that I'm thinking

13   about.

14           MS. BROWN:  -- as where here, it's just at the end

15   of a lawsuit where there's liability, so it's quite

16   different.

17           THE COURT:  I'm not going to rule on the motion at

18   the moment.  I want you to think about the issue a little

19   more.  This is what I'm thinking about.

20           MS. BROWN:  Okay.

21           THE COURT:  It may be that the simplest -- not the

22   fastest, necessarily, but the cleanest way to do this is, as

23   to the three people for whom you've identified, it may be to

24   serve.  That -- that keeps it, as to those three, it's clean,

25   it's the proper -- it's the ordinary practice.  They -- you

1    sue them, they default, or they get somebody, and then we

2    proceed from there.  And that keeps sort of all the rules as

3    to those people clean and clear.  Then it seems not

4    inevitable, but a likely outcome.

5         If you serve those three, the proper person, then

6    that there's a default, because it seems likely they wouldn't

7    appear, but one never knows.  And then there's a default, so

8    then eventually that leads to judgment, a liability, rather a

9    default, liability against them, and the damages waits until

10   the end and we see.  And that makes it sort of the City's

11   role as to those three clear, because then they're either

12   going to -- they're just going to argue that you can't reach

13   them on damages, if there is any on the grounds that there's

14   no theory that reaches liability.  It may be that you have to

15   think about whether then you'd have standing, if you won the

16   case against -- she brought against the City and then I

17   were -- depending on when you win it, like if you won it at

18   summary judgment, then it raises an interesting question

19   about who has -- who's going to participate in the damage

20   hearing as to the deceased defendants.  You should think

21   about that.  In other words, you should think -- this is a

22   complicated, little problem.  You ought to think it all the

23   way through and how to resolve the problem.

24        As to the two who there doesn't seem like there's

25   anybody, I think there should be evidence that there isn't,

1   at least in the form of a filing that you think is

2   sufficient, an affidavit that establishes what's done, why

3   that's sufficient to determine that these people are dead,

4   and there is no estate.  There's nobody -- there's no estate

5   that was ever opened.  If there was no estate that was ever

6   opened, like if you just died without a will and without any

7   probating, who would be -- you would have to go to the

8   probate court to appoint someone if you wanted to sue them,

9   right?

10          MS. THOMPSON:  We've done this in other cases where

11   we've opened an estate for someone.

12          THE COURT:  So you can open an estate as to those

13   two and have somebody appointed and then they're going to

14   default.  I think they have to default as a practical matter,

15   because who's going to pay -- how are they going to pay a

16   lawyer, right?  They can't appear for the estate.  So you

17   have the question of whether the probate court will do that,

18   right?  I don't know.  Will the probate court not do it?

19          MS. THOMPSON:  I think we'll have to determine the

20   answer to that.  I don't know the answer, so we'll see.

21          THE COURT:  If they don't, then maybe that joins --

22   then the issue might be joined as to those two.  Although

23   maybe I could issue an order that might persuade the probate

24   court to reconsider.  And I assume I don't have authority to

25   open the estate and appoint somebody, but that might be a

1    cleaner way to go, because then the roles are clear and then

2    their positions are, one, they're just defending the City,

3    and two, they're making the argument at whatever point it's

4    joined, that there is -- whatever claim or claims you have

5    against any defendant don't give rise to indemnification and

6    you respond to that.  And if there is a lawyer in, the lawyer

7    will weigh in however he or she wishes and that might be

8    cleaner, simpler, in a funny way, even though it's a little

9    more work now.

10             MS. THOMPSON:  I'll just represent for the Court

11    that the issue that's come up when we've done this in other

12    states is that -- and we recently did this in Indiana and the

13    issue that the Indiana state court raised is who am I

14    supposed to appoint as the representative.  I mean, I think

15    we're going to be back to this question, because their point

16    is, who's paying this person.  Again, the estate is a

17    fiction, so who's going to act as a representative and be

18    compensated for their time.  Certainly, you know, it's not a

19    situation where a probate court, I think, is going to force,

20    you know, someone's children or widow to act as an executor

21    or as a representative of an estate that exists solely as a

22    legal entity for a suit.  And so I suspect that we may have

23    the same problem.  We can come back to the Court when we've

24    done that, if it becomes an issue.  But that's the problem

25    that I think that comes up with doing it the way the Court's

1    proposing.

2              THE COURT:  Right.  In other words, who would you

3    appoint?

4              MS. THOMPSON:  Right.  And I think the Court just

5    doesn't agree with our assessment, there's not a true

6    conflict with the defendants.

7              THE COURT:  I'm not saying that I agree.  I'm

8    saying it's a potentially complicated question, because it

9    seems to me, if I appoint them and make the world simpler and

10   you have a claim for which there's no indemnification and a

11   claim for which there is, okay, real simple, real clear.

12   Then she's defending her case, her interest is in part to

13   defend the City of Lowell against your claims against it and

14   does whatever is appropriate for that, but as the City Clerk

15   tells her, and you defend the claim against this deceased

16   defendant, with respect to the -- one that's possible for

17   indemnification, and she says, okay.  The best way to do that

18   is stick it to him, he's deceased, it doesn't matter, is what

19   she would say, and -- maybe.  And so -- and suggests that it

20   was intentional.

21              And but that puts her in a doubly difficult bind,

22   because on the one hand, that's not really in the interest of

23   the estate, if that's who she's -- and she's not really

24   representing the estate.  She's representing that portion of

25   the estate, that person, to the extent there's

1    indemnification, but also in front of the jury, which is sort

2    of what some of this might be about for all of you, is that

3    then she's -- like she can't fully blame -- if she can fully

4    blame intentional conduct on this person, but she's also sort

5    of representing that person.  And that puts her in a

6    difficult spot in front of the jury.

7            So what I'm thinking, in a big-picture way, is

8    this.  This is what I want to think about a little bit more

9    and I think you all should think about it a little bit more.

10   I think that the plaintiff ought to be able to proceed in

11   some way against these deceased defendants.  They should be

12   able to proceed against every defendant they named unless

13   they can't serve.  So if you can't serve somebody who lives,

14   because you can't serve that person, then you can't proceed

15   against them.  But for somebody's who is dead, if you make

16   reasonable efforts, you shouldn't be thwarted in persuing

17   your claim because they're dead, where there might be

18   indemnification.

19           Just the way I wouldn't let an insurance company

20   sort of say, well, the deceased defendant, they never served

21   the deceased defendant, so go away.  And it's like, well, no,

22   there's an insurance policy here.  They'll serve you.

23   Simpler there, because the insurance company is not a party

24   to the lawsuit the way you are.  So I -- on the one hand, I

25   think they ought to be able to proceed.  To the extent they

1   have legally able -- they should not be thwarted in

2   proceeding because these people died, where there might be

3   indemnification.  That doesn't seem right to me.  And I am

4   disinclined to see the law as working out in some way that

5   does that.  That doesn't seem right.  That seems to me

6   there's some pathway in all of this to lead to that

7   possibility.

8            On the other hand, I don't think that counsel for

9   the City should be put either in the position of trying to

10  figure out do they do what's best for the City, or do they do

11  what's best for avoiding indemnification for this person, to

12  the extent those things might be different?  And I don't

13  think they should be -- if they want to stand up in front of

14  the jury and say that, look, the City of Lowell didn't have a

15  policy or practice, because that's how you get to them,

16  right?

17           MS. THOMPSON:  Right.  Through mono, yes.

18           THE COURT:  Directly.  Yes.  So the City of Lowell

19  didn't have a policy or practice and these were people who

20  went rogue.  They're entitled to make that argument and they

21  shouldn't be in the position and they shouldn't be then

22  standing up in front of the jury and saying -- and one of

23  these deceased defendants did go rogue and now I'll put my

24  hat on as like closing argument for that defendant and he did

25  go rogue.  And that's -- doesn't seem quite right.  So I see

1    that there are potential -- they could defend it in a way

2    that -- but they're not -- they shouldn't be boxed in.  They

3    should be able to make whatever arguments are in good faith

4    reasonably available to them, for each of the different

5    people who are appearing here.  That's the thing I'm

6    struggling with, how to reconcile all those.

7         So I'm unlikely to reach a resolution that doesn't

8    allow the plaintiff to go forward against deceased defendants

9    and I'm unlikely to reach a resolution that makes them --

10   limits the arguments they can make or boxes them in or puts

11   them in what might be -- I haven't thought it all the way

12   through, a quandary in terms of professional responsibility

13   or that conflicting roles limit them.  So I think the first

14   thing to do is, with that in mind, maybe you should just talk

15   to each other a little bit and see if you can't figure out a

16   way that would solve all of that.

17        One of the things that's appealing to me about

18   the -- going the -- appointing a personal representative and

19   the like, is it's -- then everybody -- you get to pursue

20   everybody and you get to make any arguments you want.  I

21   agree with you that the issue then comes down to -- the

22   probate court judge is going to ask you who.  Who am I

23   supposed to do?  Am I supposed to just make some person do

24   this for free?  And then what are they going to do?  I

25   appoint them and then how do they, in good faith, discharge

1    their responsibilities, they have to hire a lawyer to defend

2    this case.  How are they going to hire a lawyer to defend

3    this case?  They can't do that, because there's no money in

4    the estate, so what's the point of all of this?

5            And I think, in the end, the point of all that is

6    they would contact the family, I suppose, and if nobody wants

7    to do anything about it, then they would have to default.

8    But that -- from my -- that would be fine and you could --

9    from the consideration of you could proceed, you could then

10   proceed.  And from your consideration, you'd get to do

11   whatever you need to do, right?

12           MS. BROWN:  Yes.  Potentially.  I just wanted to

13   add that -- you talked a lot about presenting to the jury,

14   but I think that would kick in sort of all the way down.

15           THE COURT:  All the way down, yes.  It's the same

16   problem.  It's more vivid in front of the jury.

17           MS. BROWN:  Framing interrogatories.

18           THE COURT:  Framing the positions in every form.

19           MS. BROWN:  Yeah.  Well, discovery to take and

20   press.

21           THE COURT:  Right.  Yeah.  That's framing the

22   positions, yes.

23           So why don't you do this.  Just think about it a

24   little bit.  Talk to each other, in a week.  That's enough

25   time.  File a joint status report.  If you've all figured out

1    some brilliant way to solve all of these problems, great.

2    I'm not -- no offense, I'm not optimistic not as a reflection

3    of your brilliance, but I'm not sure that there's an easy

4    resolution.  And then if you haven't found some other

5    solution, then propose to me what you want to do.  Like are

6    you willing to go down that other road?  And I'll think about

7    it a little bit, too.

8                 MS. THOMPSON:  Understood, Your Honor.

9                 MS. BROWN:  Thank you, Your Honor.

10                MR. LAGRASSA:  Thank you.

11                THE COURT:  Okay.  All right.  Anything else we can

12   do today?

13                MS. THOMPSON:  I don't think so.  We'll continue to

14   confer in the meantime about the other defendants, the live

15   defendants, Your Honor.

16                THE COURT:  Yes, the live defendants.  All right.

17   Okay.  Sounds good.

18                MS. THOMPSON:  Thank you, Your Honor.

19                THE COURT:  It's an interesting little conundrum,

20   but I think that it's best to try to figure out how to solve

21   it simply, rather than -- the simplest solution would be the

22   best, so that you can proceed with the claims.  All right.

23   Thanks, have a good day.

24                THE DEPUTY CLERK:  This matter is adjourned.

25                (Court in recess at 3:21 p.m.)

1

2                    **CERTIFICATE OF OFFICIAL REPORTER**

3

4

5            I, Rachel M. Lopez, Certified Realtime Reporter, in

6    and for the United States District Court for the District of

7    Massachusetts, do hereby certify that pursuant to Section

8    753, Title 28, United States Code, the foregoing pages

9    are a true and correct transcript of the stenographically

10   reported proceedings held in the above-entitled matter and

11   that the transcript page format is in conformance with the

12   regulations of the Judicial Conference of the United States.

13

14                              Dated this 22nd day of October, 2019.

15

16

17

18                    /s/ RACHEL M. LOPEZ

19

20

21            _____
                Rachel M. Lopez, CRR
22              Official Court Reporter

23

24

25